# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3446
_____

Homero Garcia-Ortiz

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 24, 2021
Filed: December 17, 2021

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Homero Garcia-Ortiz petitions for review of the decision of the Board of Immigration Appeals (BIA) denying his application for cancellation of removal. Having jurisdiction under 8 U.S.C. § 1252(a)(5), this court denies the petition.

Aliens facing removal may request cancellation, a discretionary form of relief. ***Ali v. Barr***, 924 F.3d 983, 985 (8th Cir. 2019), *citing **Pereira v. Sessions***, 138 S. Ct.

2105, 2109 (2018).  To qualify, the alien must show: (1) continuous physical presence in the United States for at least ten years; (2) good moral character; (3) no convictions of certain crimes; and (4) that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative.  ***Apolinar v. Barr***, 945 F.3d 1072, 1074 (8th Cir. 2019), *citing* **8 U.S.C. § 1229b(b)(1)**.  At issue is the BIA's determination that Garcia-Ortiz's removal would not result in exceptional and extremely unusual hardship to his daughter Rosa.

Garcia-Ortiz, a native of Mexico, illegally entered the United States.  The Department of Homeland Security commenced removal proceedings in 2015.  He applied for cancellation of removal.  In April 2018, his teenage daughter, Rosa, attempted suicide by ingesting ten 500 mg tablets of naproxen and was diagnosed with major depressive disorder.  The next month, at a merits hearing on cancellation, Garcia-Ortiz testified about the suicide attempt, citing it as evidence that his removal would result in exceptional and extremely unusual hardship to Rosa.[1]

The Immigration Judge (IJ) disagreed, finding that Rosa never lost consciousness during the suicide attempt, made no further attempts to harm herself, indicated that therapy helped, had not scheduled any follow-up therapy, and appeared to be doing well.  The IJ determined that the record did not support a correlation between Rosa's suicide attempt and the removal proceedings.  Also, according to the IJ, there was "a distinct possibility" that Garcia-Ortiz would be able to reenter the United States after a "limited" period of separation.  Garcia-Ortiz appealed to the BIA.  The BIA, denying cancellation, agreed that Garcia-Ortiz failed to prove Rosa would suffer exceptional and extremely unusual hardship.  Garcia-Ortiz argues the BIA erred by (1) focusing on Rosa's "current conditions" rather than "the potential for future psychological harm," (2) doubting whether the removal

---

[1]The application also claimed that removal would result in exceptional and extremely unusual hardship to Garcia-Ortiz's son, Juan, who lost sight in one eye due to a paintball injury.  Garcia-Ortiz does not challenge the BIA's determination that removal would not result in exceptional and extremely unusual hardship to Juan.

proceedings caused Rosa's declining mental health, and (3) failing to consider the IJ's misstatement about Garcia-Ortiz's eligibility for reentry.

"We generally lack jurisdiction to consider the agency's discretionary determination that an alien failed to show an 'exceptional and extremely unusual hardship' so as to qualify for cancellation of removal." ***Apolinar***, 945 F.3d at 1074, *citing* **8 U.S.C. § 1252(a)(2)(B)(i)**. However, appellate courts may review "a constitutional challenge or question of law." ***Id.***, *citing* **8 U.S.C. § 1252(a)(2)(D)**. Petitions for review sometimes try to cloak challenges to discretionary determinations "in constitutional or legal garb." ***Hernandez-Garcia v. Holder***, 765 F.3d 815, 816 (8th Cir. 2014). *See also* ***Solis v. Holder***, 647 F.3d 831, 833 (8th Cir. 2011) ("Despite characterizing this as a question of law, Solis really challenges the discretionary conclusion of the BIA against him.").

I.

The first issue is whether, by focusing solely on Rosa's current conditions, the BIA misapplied the standard for exceptional and extremely unusual hardship. This is a question of law which this court may review. ***Gomez-Perez v. Holder***, 569 F.3d 370, 372 (8th Cir. 2009) ("Gomez-Perez first argues that the IJ and the BIA applied an incorrect legal standard by focusing on the present circumstances of his children rather than on the future hardships that they would face if he were removed. This argument raises a question of law that is within our jurisdiction to review.").

Garcia-Ortiz likens his case to *Figueroa v. Mukasey*, 543 F.3d 487 (9th Cir. 2008). Petitioners there testified that, if removed, they would take their U.S. citizen children with them to Mexico. ***Figueroa***, 543 F.3d at 490-91. They alleged exceptional and extremely unusual hardship to their daughter (eye condition) and their son (ADHD and depression). ***Id.*** at 491. The IJ evaluated those conditions as they existed in the United States without considering whether the conditions would result in exceptional hardship in Mexico. Reversing and remanding, the Ninth Circuit explained that the exceptional and extremely unusual hardship inquiry "is a

future-oriented analysis, not an analysis of [] present conditions." *Id.* at 497 (alteration added).

This court distinguished *Figueroa* in *Gomez-Perez*. There, unlike *Figueroa*, Gomez-Perez testified that his children would stay in the United States with their mother if he was removed to Guatemala. ***Gomez-Perez***, 569 F.3d at 371. Still, he asserted that "the IJ and the BIA applied an incorrect legal standard by focusing on the present circumstances of his children rather than on the future hardships that they would face if he were removed." *Id.* at 372. This court rejected the argument, focusing on the BIA's future-oriented analysis:

> [T]he IJ and the BIA properly addressed the hardships that Gomez-Perez's removal would pose for his children. In his decision, the IJ articulated the § 1229b(b)(1)(D) requirement that an applicant for cancellation of removal demonstrate that "removal *would result* in exceptional and extremely unusual hardship" to a qualifying relative. Furthermore, the IJ acknowledged the economic hardship that Gomez-Perez's children would experience as a result of his removal and concluded that there was insufficient evidence to demonstrate that the emotional and psychological effect of his departure would create exceptional and extremely unusual hardship. The BIA adopted the IJ's reasoning, stating that the IJ "properly considered . . . the economic and social disruption which would result from [Gomez-Perez's] removal." The BIA recognized that Gomez-Perez's "removal would adversely affect his family" but concluded that this "level of hardship falls short of the exceptional and extremely unusual standard." Accordingly, Gomez-Perez's argument that the IJ and the BIA applied an incorrect legal standard is without merit.

*Id.* at 373 (emphasis in original) (citation omitted).

*Gomez-Perez* controls here. As in *Gomez-Perez*, Garcia-Ortiz's children will remain in the United States with their mother if he is removed to Mexico. As in *Gomez-Perez*, the BIA here engaged in future-oriented analysis. True, the BIA adopted the IJ's findings about Rosa's current conditions, but those findings provide

context for its determination about how removal would affect her in the future. The BIA began its decision by articulating Garcia-Ortiz's obligation to demonstrate that removal *would result* in exceptional and extremely unusual hardship. It continued:

> While we sympathize with the respondent's children and we understand that the respondent's family *will likely* encounter difficulties in the respondent's absence, the Immigration Judge addressed these hardships and properly concluded that, considered in the aggregate, the hardships that the respondent's United States citizen children *will face upon his removal to Mexico* are not substantially beyond that which would ordinarily be expected from the removal of a family member.

(emphasis added). This future-oriented analysis shows that the BIA applied the correct legal standard.

## II.

The second issue is the IJ's finding that "the record did not contain sufficient evidence due to the recency of the incident to support finding that there is a correlation between [Rosa's] swallowing 10 naproxen pills and the respondent's removal proceedings"—despite her testimony "that her father's immigration status was the cause for her depression." According to Garcia-Ortiz, the IJ, who "doubted whether Garcia-Ortiz's removal proceedings had been the cause of Rosa's declining mental health," "missed the opportunity to discuss how his removal might exacerbate Rosa's situation in the future." In footnote 2 of its decision, the BIA rejected this argument from Garcia-Ortiz's brief, adopting the IJ's findings about the cause of Rosa's suicide attempt.

This court lacks jurisdiction to review this issue. In another exceptional and extremely unusual hardship case, the petitioner argued the IJ wrongly discounted evidence of his son's adjustment disorder diagnosis. ***Tejado v. Holder***, 776 F.3d 965, 968 (8th Cir. 2015). This court held that the argument was an unreviewable factual challenge. ***Id.*** at 968-69 ("Guerrero's first argument seeks reversal of the

IJ's factual evaluation of his claim. We lack the jurisdiction to do so. While Kevin's former condition is unfortunate, the weight that the IJ gave to the impact of Kevin's separation from his father remains outside our jurisdiction because it does not constitute a question of law."). Here, the cause of Rosa's declining mental health is a factual matter involving credibility assessments—"precisely the sort of discretionary, fact-finding exercise that Congress has shielded from judicial review in cancellation disputes." *See **Nunez-Acosta v. Holder***, 326 F. Appx. 978, 981 (8th Cir. 2009).

III.

The third issue—the BIA's decision not to address the IJ's misstatement about Garcia-Ortiz's eligibility for reentry—is also outside this court's jurisdiction.

The IJ misstated Garcia-Ortiz's eligibility in noting "a distinct possibility" that Garcia-Ortiz would be able to reenter the United States after a "limited" period of separation. "Any alien . . . who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States . . . is inadmissible." **8 U.S.C. § 1182(a)(9)(B)(i)(II)**. The Attorney General has discretion to waive inadmissibility only in the case of an immigrant who is the spouse, son, or daughter of a United States citizen. **8 U.S.C.A. § 1182(a)(9)(B)(v)**. Because Garcia-Ortiz was unlawfully present in the United States for more than one year, and is not the spouse or child of a U.S. citizen, he was not eligible to reenter the United States for ten years. However, the BIA's decision did not discuss—let alone adopt—the IJ's conclusion about Garcia-Ortiz's prospects for reentry. In fact, the BIA stated it was "unnecessary to address any of the remaining issues raised by the parties on appeal," one of which was the IJ's misstatement of 8 U.S.C. § 1182.

"Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." ***Fofanah v. Gonzales***, 447 F.3d 1037, 1040 (8th Cir. 2006). *See **Solis***, 647 F.3d at 833 (an IJ's

legal conclusions are reviewable only to the extent that they have been adopted by the BIA).  Garcia-Ortiz appears to challenge the IJ's legal conclusion, which was not adopted by the BIA and is not subject to this court's review.  To the extent Garcia-Ortiz alleges that the BIA should have considered the IJ's misstatement in its de novo hardship analysis, this is exactly the kind of discretionary "weigh[ing] of factors in the proper balancing test" this court lacks jurisdiction to review.  *Id.* (alteration added).

\* \* \* \* \* \* \*

The petition for review is denied.

_____